UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

JEFFREY DAVID McCOLLUM, JR.,           )
                                       )
                Plaintiff,             )
                                       )   Case No: 1:17-cv-292
v.                                     )
                                       )   Judge Christopher H. Steger
NANCY A. BERRYHILL                     )
Acting Commissioner of Social Security,)
                                       )
                Defendant.             )

## MEMORANDUM OPINION

**I.      Introduction**

Before the Court is Plaintiff's Motion for Judgment on the Pleadings [Doc. 15] and Defendant's Motion for Summary Judgment [Doc. 19]. Jeffrey David McCollum, Jr. ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), which constitutes the final decision of the Commissioner of Social Security ("Commissioner"). For the reasons that follow, the decision of the Commissioner will be **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

**II.     Procedural History**

In January 2014, Plaintiff applied for disability insurance benefits and supplemental security income under Title II of the Act, 42 U.S.C. §§ 401-434, alleging disability as of August 15, 2014 (Tr. 18). Plaintiff's claims were denied initially as well as on reconsideration [*Id.*]. As a result, Plaintiff requested a hearing before an administrative law judge [*Id.*]. That hearing took place in February 2016 before ALJ Kristie Luffman-Minor. At the hearing, the ALJ heard

testimony from Plaintiff and a Vocational Expert, as well as argument from Plaintiff's attorney [*Id.* at 18-29]. The ALJ then rendered her decision, finding that Plaintiff was not under a "disability" as defined in the Act [*Id.* at 29].

Following the ALJ's decision, Plaintiff requested that the Appeals Council review the denial of benefits; however, his request for review was denied [*Id.* at 1]. After exhausting his administrative remedies, Plaintiff filed his Complaint on October 18, 2017, seeking judicial review of the Commissioner's final decision under § 405(g) [Doc. 1]. The parties filed competing dispositive motions, and this matter is now ripe for adjudication.

## III. Findings by the ALJ

The ALJ made the following findings with respect to Plaintiff's claim for disability benefits:

1. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016.

2. Plaintiff had not engaged in substantial gainful activity since August 12, 2013, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et. seq.*).

3. Plaintiff has the following severe impairments: degenerative-disc disease; degenerative changes in the bilateral hips; morbid obesity; seizure disorder; bipolar disorder not otherwise specified; sleep-terror disorder; major depressive disorder and generalized anxiety disorder (20 C.F.R. 404.1520(c) and 416.920(c)).

4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

5. Absent certain limitations, Plaintiff retained the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a).

6. Plaintiff is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. Plaintiff was born on January 13, 1983, and was 30 years old, which is defined as a younger individual (age 18-49) on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8. Plaintiff has a limited education and can communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not an issue because Plaintiff's past relevant work is unskilled (20 C.F.R. 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The Plaintiff has not been under a disability, as defined in the Social Security Act, from August 12, 2013, through the date of the ALJ's decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. at 18-29).

## IV. Standard of Review

In this case, Plaintiff makes an application for disability insurance benefits ("DIB"). An individual qualifies for DIB if he: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled. 42 U.S.C. § 423(a)(1). The determination of disability under the Act is an administrative decision. To establish disability under the Social Security Act, a claimant must establish that he is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he is not disabled; (2) if the claimant does not have a severe impairment he is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he is disabled; (4) if the claimant is capable of returning to work he has done in the past he is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that he cannot return to his former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he can perform considering his age, education and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely

because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision-makers. It presupposes there is a zone of choice within which the decision-makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

The court may consider any evidence in the record, regardless of whether the ALJ cited it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, for purposes of substantial evidence review, the court may not consider any evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the Court is not obligated to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

**V.     Analysis**

Applying the standard of review set forth above, the ALJ found that Plaintiff was not disabled, and that Plaintiff had the residual-functional capacity to perform sedentary work with the following limitations:

> Lift up to 20 lbs. frequently and 10lbs. occasionally; sit 6-8 hours: stand/walk 2 out of 8; would need a sit stand option sitting for 2 hours than sanding and stretching; could occasionally climb ramps, stairs, balance, stoop, kneel, crouch, crawl but

could never climb ladders, ropes and scaffolds, work at unprotected heights or with dangerous machinery; could understand, remember, and carry out simple, routine instructions; could make work-related judgments typically required for unskilled work; could respond appropriately to supervision, coworkers, and work situation; could have contact with the general public on a rare one-on-one basis and with supervisors and coworkers on an occasional basis; could deal with changes in a routine work setting on an infrequent basis; and would work better with things rather than people.

(Tr. 22).

Plaintiff asserts that, when the ALJ applied the five-step sequential evaluation, the ALJ committed reversible error [*See* Doc. 16]. Principally, Plaintiff contends that substantial evidence does not support the ALJ's determination that Plaintiff is not disabled.

**A.      Did the ALJ err by failing to explain why she rejected portions of Dr. Langford's opinion?**

Plaintiff saw Dr. Dee Langford, EdD, for a psychological evaluation in March 2014 (Tr. 489). McCollum was referred to Dr. Langford by "the Tennessee Disability Determination Services, to provide more information related to [ ] [his] level of psychological functioning and to determine the impact of any possible psychiatric diagnosis on his mental state." (Tr. at 489). In her medical-source opinion from that evaluation, Dr. Langford noted that Plaintiff:

> may have difficulty with concentration and persistence. . . . He appears able to make simple work-related decisions and carry out instructions. He will likely be unable to maintain a schedule and attendance and sustain concentration for an extended period. He seems unable to persist during a workday without interruption from psychological symptoms. . . . This individual may not be able to adapt to changes and requirements. . . .

(Tr. 492). Dr. Langford also found that Plaintiff's "psychiatric state was anxious and irritable. He shows evidence of a moderate impairment in his social relating. He appears to be moderately impaired in his ability to adapt to change. He appears to follow instructions, both written and

spoken. He appears to have had a fragmented work history. He appears able to handle finances." (*Id.* at 493).

Plaintiff contends that the ALJ rejected portions of Dr. Langford's opinion without explaining why she did so. The Code of Federal Regulations provides the following guidance with respect to the evaluation of medical evidence:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
>
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
>
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(h) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion . . . .
>
> (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion . . . .
>
> (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.

> (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.

20 C.F.R. § 416.927(d). *See* 20 C.F.R. § 404.1527(d).

In considering medical opinions, an ALJ must articulate the reason underlying her decision to assign a specific amount of weight or credibility to each such opinion.[1] *See* 20 CFR § 404.1527(d); *Allen v. Comm'r. of Soc. Sec.*, 561 F.3d 646 (6th Cir. 2009). The reasons must be supported by the evidence and must be sufficiently specific to make clear to any subsequent reviewers the weight that an ALJ gave to the medical opinion and the reasons for that weight. SSR 96–2p.

The Regulations mandate that the ALJ is to evaluate every medical opinion in the record, and, unless giving a treating physician's opinion controlling weight, must consider all of the listed factors when deciding the weight to accord medical opinions. 20 C.F.R. § 416.927(d); 20 CFR § 404.1527(d).

In assessing Dr. Langford's medical opinion concerning Plaintiff, the ALJ "afforded some weight to the extent consistent with the residual functioning capacity assessment." (Tr. 27). The ALJ did not specify what portions of Dr. Langford's opinion she was adopting or what parts she was rejecting (*See id.*). However, the ALJ went on to say:

> It is significant to note that Dr. Langford indicated that the claimant would likely be unable to maintain a schedule and attendance. He seemed unable to persist, during a workday, without interruption from psychological symptoms. The

---

[1] There are circumstances when an ALJ's failure to articulate good reasons for the weight accorded to medical opinions may constitute harmless error: (1) if a treating source opinion is so patently deficient that the ALJ could not possibly credit it; (2) if the ALJ adopts the opinion or makes findings consistent with the opinion; and/or (3) if the ALJ has complied with the goal of 20 C.F.R. § 1527(d), by analyzing the physician's contradictory opinions or by analyzing other opinions of record. *See, e.g.*, *Friend*, 375 Fed. Appx. at 551; *Nelson v. Comm'r. of Soc. Sec.*, 195 Fed. Appx. 462, 470–72 (6th Cir. 2006); *Hall v. Comm'r. of Soc. Sec.*, 148 Fed. Appx. 456, 464 (6th Cir. 2006).

> claimant may not be able to adapt to changes and requirements. His evaluation demeanor was one of anxiety and irritability. The claimant seemed moderately impaired with his ability to adapt to change. However, he seemed able to follow instructions, both written and spoken. Therefore, Dr. Langford diagnosed the claimant with major depressive disorder, moderate and generalized anxiety disorder. His general mental health records show that the claimant complained of suicidal and homicidal ideations, sleep terrors and depression.

(*Id.*). The ALJ then concluded that "[t]hese mental deficits are likely to result in the limitations indicated by Dr. Langford's psychological examination findings. Accordingly, Dr. Langford's findings are afforded significant weight." (*Id.*).

Despite giving Dr. Langford's overall assessment significant weight, the ALJ failed to explain why she rejected parts of Dr. Langford's opinion and only accepted parts "to the extent consistent with the residual functioning capacity assessment." (*Id.*). Without such explanation, the Court does not have a basis to determine the ALJ's rationale for accepting in part and rejecting in part Dr. Langford's medical opinion. *See* SSR 96–2p. Failure to determine the degree of deference owed to a non-controlling treating-source opinion, "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Friend v. Comm'r of Soc. Sec.*, 375 Fed. App'x. 543, 551 (6th Cir. 2010) (per curiam) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)). Because the ALJ failed to explain why she accepted some parts of Dr. Langford's opinion while rejecting others, the Court finds that the ALJ's decision is not supported by substantial evidence.

### B. In the hypothetical posed to the Vocational Expert, the ALJ failed to include the limitations articulated by Dr. Langford.

The ALJ gave significant weight to Dr. Langford's opinion; however, in the hypothetical she posed to the Vocational Expert, the ALJ failed to include Dr. Langford's stated limitations for Plaintiff. (Tr. at 65-66). To establish that Plaintiff can perform work that is available in the national

9

economy, the ALJ must make a finding "supported by substantial evidence that [P]laintiff has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This kind of "[s]ubstantial evidence may be produced through reliance on the testimony of a Vocational Expert in response to a 'hypothetical' question, but only 'if the question accurately portrays [P]laintiff's individual physical and mental impairments.'" *Id.* (citations omitted).

Dr. Langford expressed the opinion that Plaintiff would have some limitations on his ability to work consistently for an extended period of time. More specifically, she opined, "[H]e will likely be unable to maintain a schedule and attendance and sustain concentration for an extended period. He seems unable to persist during a workday without interruption from psychological symptoms. . . ." Based on Dr. Langford's opinion that Plaintiff could not "sustain concentration for an extended period" and would be "unable to persist during a workday without interruption," Plaintiff's attorney posed a hypothetical to the Vocational Expert asking whether an "individual that has difficulty with concentration and persistence . . . . [could] be able to perform any of [ ] [Plaintiff's] past relevant work or any other work[,]" with at least 20% off-task in the workday. The Vocational Expert replied that Plaintiff could not perform such work with that degree of limitation (*Id.* at 65). The Vocational Expert stated that "[n]o one could on th[at] basis because there is a fairly consistent requirement for production rate pace, an ongoing quota getting some type of work product out, and a 20% time off-task is inconsistent with meeting [ ] production norms . . . ." (*Id.*). Plaintiff's attorney then asked the Vocational Expert to provide an opinion as to the maximum off-task time—as a percentage of the work period—that would be allowed in an unskilled work setting. The Vocational Expert responded that "about 5% of the time scattered

throughout the work shift is about the upper end of tolerance . . . ." (*Id.*). Or, in other words, if an unskilled worker is off-task more than 5% of the time during a work period, he or she would be terminated.

Based on Dr. Langford's opinion that Plaintiff would "likely be unable to maintain a schedule and attendance," Plaintiff's attorney posed a question to the Vocational Expert as to whether Plaintiff could perform any job if he had to miss "at least three unapproved absences of work each month." (*Id.* at 66). Again, the Vocational Expert responded in the negative, stating that "all of the entry level jobs have very strict attendance requirements, and if absenteeism occurs more than one day a month for more than eight times in a year, that's when it can result in termination from the job." (*Id.*).

Finally, relying upon Dr. Langford's opinion that Plaintiff "may not be able to adapt to changes and requirements," Plaintiff's attorney posed a question to the Vocational Expert asking whether Plaintiff could perform any job if he was not adaptable to changes in the workplace setting (*Id.*). The Vocational Expert responded that Plaintiff could not perform any such jobs "because while there may not be changes in the work process with entry level jobs[,] you're always going to be having new people coming in and other people going out." (*Id.*).

Based on the hypothetical questions posed by Plaintiff's counsel, a fair summary of the Vocational Expert's testimony is that, based upon at least one interpretation of Dr. Langford's stated limitations, Plaintiff could not perform any jobs. Despite giving Dr. Langford's opinion "significant weight," the ALJ failed to include Dr. Langford's limitations in the questions that she posed to the Vocational Expert. Beyond that, she did not expressly account for those limitations in her decision.

The hypothetical questioning relied upon by the ALJ does not paint a full and accurate picture of Plaintiff's impairments. And, the medical evidence set forth in Dr. Langford's opinion reflects that Plaintiff's abilities may be more limited than the restrictions attributed to Plaintiff by the ALJ in her assessment of residual-functional capacity. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (remanding a case because "the hypothetical question does not paint an accurate picture of [plaintiff]'s impairments and the testimony of the VE in reliance upon the hypothetical question is not substantial evidence for the ALJ's conclusion . . . ."). For these reasons, the Court finds that substantial evidence does not support the ALJ's decision, and this case will be remanded to consider Plaintiff's limitations in light of Dr. Langford's opinion.

## VI. Conclusion

Substantial evidence does not support the ALJ's determination that Plaintiff could perform sedentary work with certain limitations (*See* Tr. 18-29). Having reviewed the administrative record and the parties' briefs, Plaintiff's Motion for Judgment on the Pleadings [Doc. 15] will be **GRANTED**, the Commissioner's Motion for Summary Judgment [Doc. 18] will be **DENIED**, and the decision of the Commissioner is **REVERSED** and **REMANDED** under sentence four of 42 U.S.C. § 405(g). The Commissioner is **DIRECTED** to reconsider Plaintiff's application in a manner consistent with this opinion.

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE